IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2018

**STATE OF TENNESSEE v. ERIC BATTLE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-03271      Lee V. Coffee, Judge**

**No. W2017-01234-CCA-R3-CD**

A Shelby County jury convicted the Defendant, Eric Battle, of one count of attempted first degree premeditated murder, five counts of aggravated assault, one count of employment of a firearm during the commission of a dangerous felony, and one count of being a convicted felon in possession of a firearm.   On appeal, the Defendant claims that: (1) the trial court erred when it ruled that a witness's proposed testimony was inadmissible; (2) the evidence was insufficient to sustain his convictions; and (3) the trial court erred when it declined to instruct the jury on self-defense.   After a thorough review of the record and applicable law, we affirm the trial court's judgments, but we remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

J. Shae Atkinson (on appeal) and Juni Ganguli (at trial), Memphis, Tennessee for the appellant, Eric Battle.

Herbert H. Slattery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Kevin McAlpin, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**

This case arises from the Defendant shooting into a car occupied by Mardarius Marshall, Lacorsha Snipes, Joe Snipes, and Trenita Pulliam.   One of the bullets struck Lacorsha Snipes in the knee.   A Shelby County grand jury indicted the Defendant for one count of the attempted first degree premeditated murder of Mardarius Marshall, two counts

of aggravated assault on Lacorsha Snipes, one count of aggravated assault on Joe Snipes, one count of the aggravated assault on Trenita Pullian, one count of employment of a firearm during the commission of a dangerous felony, and one count of being a convicted felon in possession of a firearm.

## I. Facts

At the Defendant's trial on these charges, the parties presented the following evidence: Mardarius Marshall testified that he had known the Defendant for a couple of years, meeting him through Mr. Marshall's brother. At the time of the incident, which occurred on December 19, 2014, there was a disagreement between the Defendant and Mr. Marshall's brother over a female. Mr. Marshall and his mother, Trenita Pulliam, who both worked at FedEx, left work that evening along with a co-worker, Joe Snipes. Around 9:30 p.m., Mr. Marshall, Ms. Pulliam, and Mr. Snipes drove from the FedEx facility and picked up Lacorsha Snipes, Mr. Snipes's daughter, from her job. Traveling in the same vehicle, the group stopped at a Mapco gas station on New Allen Road. No one in the vehicle was armed. When they arrived at the gas station, the Defendant's vehicle was parked out front; Mr. Marshall did not recognize the vehicle. As Mr. Marshall's vehicle pulled into the parking lot, Mr. Snipes immediately said, "He got a gun," at which point Mr. Marshall "sped off" away from the Mapco. As Mr. Marshall pulled away, he saw the Defendant holding something and then he heard shots fired. Ms. Snipes said she was "hit," so Mr. Marshall called 911. Mr. Marshall drove to the hospital where the group was met by the police. Ms. Snipes was the only person in the vehicle who was injured.

Mr. Marshall identified photographs of his vehicle and pointed to three bullet holes in the body of the vehicle and the muffler that were not there before this incident. Viewing security camera footage from the Mapco, shown at several angles, Mr. Marshall identified the Defendant and his vehicle in the parking lot. Mr. Marshall pointed out his own vehicle pulling into the parking lot and Ms. Snipes in the backseat. Mr. Marshall stated he did not speak to the Defendant nor did he threaten him. Mr. Marshall agreed that sometimes his brother drove his vehicle.

On cross-examination, Mr. Marshall stated that the disagreement between the Defendant and Mr. Marshall's brother had been going on for a while, and Mr. Marshall and the Defendant themselves had "had words" in the past. He denied that they had ever been "physical" toward each other and said that their interactions had not involved physical threats. Mr. Marshall clarified that he was driving his vehicle and that Ms. Pulliam was in the front passenger seat. Behind him sat Ms. Snipes in the back seat, and Mr. Snipes next to her, behind the front passenger seat. Mr. Marshall agreed that there were several gas stations close to his work as well as one near Ms. Snipes's place of employment. Mr. Marshall agreed that the Defendant's mother worked at the Mapco where he stopped but

2

that he did not know this at the time of the incident. Mr. Marshall further stated that he did not know it was the Defendant's car parked outside the Mapco when he pulled into the parking lot.

Trenita Pulliam testified that she was Mr. Marshall's mother and was with him in his vehicle the night of the incident. Together they drove with Mr. Snipes from FedEx and, after picking up Ms. Snipes, drove to the Mapco station. Ms. Pulliam did not know the Defendant and had never seen him before. She stated that none of the vehicle's occupants were armed. As the group pulled into the Mapco station, they saw a man with a gun, and he began shooting. Ms. Pulliam saw the gun and ducked. She recalled that Mr. Marshall was "ducking and driving." Mr. Marshall's vehicle did not have any open windows, and no one inside threatened anyone.

On cross-examination, Ms. Pulliam agreed that the Defendant and her son had an ongoing argument at the time of the shooting over a girl.

Joe Snipes testified to the same version of events as Mr. Marshall and Ms. Pulliam. He stated that he did not know the Defendant and that the group was not looking for him that night. He denied that anyone in the vehicle was armed. When the shooting began, Mr. Snipes ducked and grabbed Ms. Snipes to pull her down with him. Mr. Marshall then sped away from the scene. Ms. Snipes was shot in the leg. The group went immediately to the hospital where doctors operated on Ms. Snipes. Mr. Snipes stated that he was afraid for his and his daughter's lives.

On cross-examination, Mr. Snipes stated that as soon as Mr. Marshall's vehicle pulled into the parking lot, the shooting began. Mr. Marshall's vehicle had to pass the Defendant's vehicle to reach the gas pump, and, as it passed, Mr. Snipes saw the gun and alerted everyone. Mr. Snipes estimated that the Mapco was about two minutes from his house where Mr. Marshall was going to drop him off along with his daughter.

Michael Garner testified that he was a detective with the Memphis Police Department and was assigned to work this investigation on December 20, 2014. Detective Garner prepared photographic lineups, which included a photograph of the Defendant; he showed the lineups to Mr. Marshall and Ms. Snipes, both of whom identified the Defendant as the shooter. Detective Garner viewed the security camera footage from the Mapco and stated that two people could be seen shooting in the video; the victims did not identify a second shooter and that person was never found. Detective Garner stated that the gun seen by the victims was also never found.

Lacorsha Snipes testified to the same version of the events as the other occupants of Mr. Marshall's vehicle. Ms. Snipes detailed that, as the vehicle pulled into the Mapco

parking lot, she saw a "face and a gun" and then the shooting began. Ms. Snipes was shot in the knee and had the bullet surgically removed. Ms. Snipes identified the Defendant in the courtroom and said she was one hundred percent certain that he was the person who shot her.

On behalf of the Defendant, Victoria Naantaabuu testified that she was the Defendant's girlfriend at the time of the incident in 2014. Ms. Naantaabuu stated that she had also dated Mr. Marshall's brother, Antonio Jordan, sometime in 2010 while the Defendant was in jail. The Defendant was released in 2012 or 2013, and they resumed their relationship. Mr. Jordan did not like this, and he had a bad relationship with the Defendant as a result. The two men exchanged text messages and phone calls that were negative and aggressive.

In 2014, Ms. Naantaabuu worked at a McDonald's restaurant, as did the Defendant, and they lived together with the Defendant's mother. On the night of the shooting, Ms. Naantaabuu left their apartment for work and when she returned later, she discovered bullet holes in the walls of the apartment. No investigation was ever conducted into the perpetrator of the shooting.

Joyce Battle, the Defendant's mother, testified that, on the night of the incident, she returned to her apartment and found bullet holes in the walls. She stated that the Defendant was very nervous and scared because "the guy was after him." Ms. Battle began to testify about whom she believed might have shot her apartment, based on what other people had told her, and the State objected on the grounds that the testimony would be inadmissible hearsay; the trial court sustained the objection.

Ms. Battle testified that, after she discovered bullet holes in her apartment, the Defendant took her to her job at the Mapco station. They drove on back streets to the Mapco because of the Defendant's nerves; another man was also in the car but Ms. Battle did not know his name. At the Mapco station, Ms. Battle went inside to purchase an item before her shift began and, as she was waiting in line to pay, she observed a vehicle pull into the parking lot and saw the Defendant shoot at the vehicle.

The jury convicted the Defendant of one count of attempted first degree premeditated murder, five counts of aggravated assault, one count of employment of a firearm during the commission of a dangerous felony, and one count of being a felon in possession of a firearm. The trial court sentenced the Defendant as a Range II, multiple offender. The trial court imposed a sentence of thirty-five years for the attempted first degree premeditated murder of Mr. Marshall and a sentence of ten years for the aggravated assault on Mr. Marshall. The trial court merged the convictions for the attempted first degree premeditated murder and the aggravated assault. The trial court

imposed consecutive sentences of ten years for each of the four remaining aggravated assault convictions but merged the two convictions for aggravated assault on Lacorsha Snipes. For the employment of a firearm during the commission of a dangerous felony conviction, the trial court imposed a consecutive ten-year sentence. Finally, for the convicted felon in possession of a firearm conviction, the trial court imposed a consecutive ten-year sentence, for a total effective sentence of eighty-five years. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it did not allow Ms. Battle to give testimony about who might have shot her apartment on the grounds that it was inadmissible hearsay; (2) the evidence is insufficient to support his convictions; and (3) the trial court erred by refusing to charge the jury with a self-defense instruction or defense of a third party instruction. The State responds that the trial court properly excluded Ms. Battle's hearsay testimony and that the evidence is sufficient to support the Defendant's convictions. The State further responds that the proof supported the trial court's decision not to charge the jury with a self-defense instruction.

## A. Exclusion of Ms. Battle's Testimony

The Defendant argues that Ms. Battle's testimony about who shot her apartment was excluded in error. He argues that her testimony was highly relevant to show the Defendant's state of mind and that he had reasonable fear that someone was trying to harm him. The Defendant contends that Ms. Battle's testimony was not being offered for the truth of the matter asserted and, even if it was hearsay, was admissible pursuant to the excited utterance exception. The State responds that the Defendant made no objection to the trial court's limitation on Ms. Battle's testimony and even so, the testimony was inadmissible and not subject to any hearsay exceptions. We agree with the State.

The following exchange occurred during Ms. Battle's testimony:

DEFENSE COUNSEL: When you got back up to the apartment and found it had been shot up, how was [the Defendant] acting?

WITNESS: I didn't see [the Defendant] til that night.

DC: Okay.

WITNESS: I went to the office. I had to go to the office and talk to the rent

5

lady about, you know, the rent. And when I got there, she said, "Ms. Battle, what's been going on over there?"

STATE: Objection.

WITNESS: "Who been over there shooting?"

COURT: Ms. Battle, hold on one second.

WITNESS: Oh.

COURT: The State is objecting to that statement. So, you can't tell the jury what somebody else might have said.

Without further objection or discussion, defense counsel continued questioning Ms. Battle. The Defendant raised the issue of the admissibility of the testimony in his motion for new trial, following which the trial court ruled that, while it had allowed Ms. Battle to testify to the background and her firsthand knowledge of the shooting of her apartment, it had stopped Ms. Battle short of giving "her speculation or conjecture as to who she thought might have, in fact, shot up this apartment." The trial court went on to conclude that her testimony was not relevant pursuant to Tennessee Rule of Evidence 401, in that it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be with [Ms. Battle's testimony.]" The trial court stated that even if her testimony were relevant, it would be excluded because

> "the probative value . . . was . . . substantially outweighed by the danger of unfair prejudice" that would allow the jury to "guess, or speculate that Mr. Marshall or his brother may have been involved in the shooting up of an apartment when there was absolutely no proof on the record."

As an initial matter, we note that the Defendant failed to object to the exclusion of the testimony during trial. Failure to make a contemporaneous objection can result in waiver of the issue. Tenn. R. App. P. 36(a) (noting that relief on appeal is typically not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error."); Tenn. R. Evid. 103(a)(1) (requiring a timely objection as a prerequisite to a finding of error based on the trial court's admission of evidence). Because the Defendant raised the issue in his motion for new trial, we will address the issue.

The admissibility of evidence rests within the sound discretion of the trial court,

6

and this court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record. *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id.* Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). Hearsay is not admissible unless admission is authorized by the evidence rules or by other controlling provisions of law. *Id.* at 802. The excited utterance exception allows hearsay to be admitted when the statement is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). 'The standard of review for rulings on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015), *cert. denied*. The "factual and credibility findings" made by the trial court when considering whether a statement is hearsay, "are binding on a reviewing court unless the evidence in the record preponderates against them." *Id.* (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). "Once the trial court has made its factual findings, the next questions – whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule – are questions of law subject to de novo review." *Id.* at 479 (citations omitted).

Following our review of the transcript, we conclude that the trial court did not abuse its discretion when, after reviewing Ms. Battle's trial testimony during the motion for new trial hearing, it found that her testimony about who shot her apartment was not admissible on the grounds that it was irrelevant and speculative. Just as the trial court stated, the facts of who shot Ms. Battle's apartment were not presented to the jury and as such, Ms. Battle's testimony on the subject was not relevant. Any portion of her testimony that might have included another's statement about who committed the shooting would have been hearsay. No evidence was offered that any statements were made immediately following the shooting or in response to it sufficient to justify the admission of such a statement under the excited utterance exception. For these reasons, the trial court properly excluded Ms. Battle's testimony on this matter. The Defendant is not entitled to relief on this issue.

7

## B. Sufficiency of the Evidence

The Defendant asserts that the evidence is insufficient to sustain his convictions for attempted first degree murder and aggravated assault. He specifically contends that he acted out of defense of himself and his mother after their apartment was shot up and because of his ongoing feud with Mr. Marshall and his brother. The State responds that the evidence is sufficient to sustain his convictions and that, despite the Defendant making the argument to the jury that he acted out of self-defense, the jury by its verdict did not accredit this argument. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale

for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

First degree murder is the premeditated and intentional killing of another person. T.C.A. § 39-13-202(a)(1) (2014). A premeditated killing is one "done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d) (2014). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part . . . ." T.C.A. § 39-12-101(a)(2) (2014). Relevant to this case, aggravated assault occurs when a defendant intentionally or knowingly causes another to reasonably fear imminent bodily injury involving the use or display of a deadly weapon. T.C.A. §§ 39-13-101(a)(2); 39-13-102(a)(1)(A)(iii) (2014).

We conclude that the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find the Defendant's conduct constituted a substantial step towards the killing of Mr. Marshall. The evidence was that the Defendant used a gun to shoot multiple shots towards Mr. Marshall's vehicle as Mr. Marshall drove away; several of the shots hit Mr. Marshall's vehicle. This is sufficient evidence from which a jury could find beyond a reasonable doubt that the Defendant was guilty of attempted first degree premeditated murder. This evidence was also sufficient to sustain the Defendant's conviction for aggravated assault of Mr. Marshall. We note that this conviction was merged with the attempted first degree murder conviction.

As to the two counts of aggravated assault of Ms. Snipes, the evidence that Ms.

Snipes was shot in the leg and placed in fear of her life is sufficient to sustain those convictions, which were ultimately merged by the trial court. Mr. Snipes testified that he was in fear for his life, and Ms. Pulliam testified that, when the Defendant shot at the vehicle, she ducked and hid to avoid being shot. This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of aggravated assault of these two victims.

As to the Defendant's argument that he acted in self-defense, we note that it is well established, under Tennessee law, "that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact." *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (citing *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)). The evidence was that Mr. Marshall's vehicle drove in to the gas station parking lot, and, before the vehicle had stopped, the Defendant started shooting. No one inside Mr. Marshall's vehicle was armed, the windows were not down, and none of the vehicle's occupants acted in a threatening manner towards the Defendant. By its verdict, the jury rejected the Defendant's argument that the shooting by the Defendant was in self-defense or in the defense of others. Accordingly, the Defendant is not entitled to relief on this issue.

### C. Self-Defense Instruction

The Defendant next contends that the trial court erred when it declined to instruct the jury on self-defense, as the two defense witnesses provided enough testimony to justify such an instruction. The State contends that the trial court properly found that there was no proof that the Defendant was in imminent danger of death or serious bodily injury and did not err when it declined to instruct the jury in that regard. We agree with the State.

A trial court has the duty to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Nothing short of a "'clear and distinct exposition of the law'" satisfies a defendant's constitutional right to trial by jury. *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting *State v. McAfee*, 737 S.W.2d 304 (Tenn. Crim. App. 1987)). In other words, the trial court must instruct the jury on those principles closely and openly connected with the facts before the court, which are necessary for the jury's understanding of the case. *Elder*, 982 S.W.2d at 876. A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Stephenson*, 878 S.W.2d 530, 555 (Tenn. 1994)). Because questions regarding the propriety of jury instructions are mixed questions of law and fact, our standard of review here is *de novo*, with no presumption of

correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001). Even if a trial court errs when instructing the jury, such instructional error may be found harmless. *State v. Williams*, 977 S.W.2d 101, 104 (Tenn. 1998).

A defendant is entitled to an instruction on self-defense if self-defense is fairly raised by the evidence. *Myers v. State*, 206 S.W.2d 30, 32 (Tenn. 1947). "In determining whether a defense instruction is raised by the evidence, the court must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001). "The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013). If the defense is fairly raised by the admissible evidence, "the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense does not apply," *id.*, and the issue of whether a defendant acted in self-defense becomes a factual determination to be made by the jury. *State v. Echols*, 382 S.W.3d 266, 283 (Tenn. 2012). However, "[t]he issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." T.C.A. § 39-11-203(c).

The trial court reviewed the evidence and made the following statement with regard to the Defendant's request for a self-defense jury instruction:

> [The Defendant] unloads a gun, firing multiple shots at a car, with unknown people in the car. Absolutely nothing on the record that would indicate that [the Defendant], his mother, or anyone else, this third unknown person, in that car knew who was occupying the car, knew whether or not it was [Mr.] Marshall, or whether it was [Mr. Marshall's brother], or whether it was Lacorsha Snipes. And there's nothing on the record that would indicate that Lacorsha Snipes and Joe Snipes had any problem with this Defendant, or [his mother].
>
> And there's absolutely nothing on the record that would indicate that any of the occupants of the car in which the Defendant was in knew even who they were shooting at or knew who may have been following him.
>
> There's nothing on the record that would indicate that [the Defendant's mother or the Defendant] were in imminent . . . danger of death or serious bodily injury when this Defendant fired multiple shots at a car, ended up shooting a young eighteen-year-old in the leg at the time that he fired, allegedly, these shots against the victim in this case.

The Defendant's argument that the jury should have been instructed on self-defense relies solely on his assertion and his mother's testimony that someone connected to Mr. Marshall may have shot at their apartment prior to the shooting and that the Defendant was scared and nervous as a result. We conclude that the record does not support a self-defense instruction as there was no evidence to justify the instruction other than the vague testimony of the Defendant's mother that he was afraid. This issue is without merit.

### D. Errors in Judgments

We turn to address, of our own accord, the issue of the judgments of conviction and errors on the judgments in Counts 5, 6, 7 and 8. The Defendant was convicted of attempted first degree premeditated murder in Count 1; aggravated assault in Counts 2, 3, 4, 5, and 6, with Count 2 merging with Count 1 and Count 4 merging with Count 3; employing a firearm during the commission of a dangerous felony in Count 7; and being a convicted felon in possession of a firearm in Count 8. The judgment sheets in Counts 7 and 8 erroneously list aggravated assault as the offense of conviction. Further, the judgment in Count 5 should be corrected to indicate that the sentence is consecutive to Counts 1, 3, 4, 6, 7, and 8; the judgment in Count 6 should be corrected to indicate that the sentence is consecutive to Counts 1, 3, 4, 5, 7, and 8. We remand the case to the trial court for entry of corrected judgments to reflect the correct offense in Count 7, employing a firearm during the commission of a dangerous felony, Tennessee Code Annotated section 39-17-1324, and in Count 8, being a convicted felon in possession of a firearm, Tennessee Code Annotated section 39-17-1307. Corrected judgments must also be entered in Counts 5 and 6 for the reasons stated above.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's convictions, but we remand to the trial court for entry of corrected judgments of conviction as stated above.

_____
ROBERT W. WEDEMEYER, JUDGE